# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| D.O. and M.O., on behalf of C.O., a minor child, M.W. and G.W., on behalf of C.W., a minor child, and J.G. individually, | : : : : : : : | |
| Plaintiffs, | : : | Civil Action No. 10-cv-2339 (NLH)(AMD) |
| v. | : : : | **MEMORANDUM OPINION AND ORDER** |
| EDWARD F. BORDEN, JR., HADDONFIELD POLICE DEPARTMENT, and BOROUGH OF HADDONFIELD, | : : : : : | |
| Defendants. | : : | |

**APPEARANCES:**

Hercules Pappas, Esquire
Matthew S. Wolf, Esquire
Pappas & Wolf, L.L.C.
423 White Horse Pike
Haddon Heights, NJ 08035
    *On behalf of plaintiffs*

John Charles Gillespie, Esquire
Parker McCay, P.A.
Three Greentree Center
7001 Lincoln Drive West
P.O. Box 974
Marlton, N.J. 08053
    and
Mario A. Iavicoli, Esquire
43 Kings Highway West
Haddonfield, N.J. 08033
    *On behalf of defendants*

**HILLMAN, District Judge**

     This matter having come before the Court on plaintiffs'

motion to dismiss defendants' counterclaim[1]; and

Plaintiffs, D.O and M.O., and M.W. and G.W., on behalf of their minor children, C.O. and C.W., respectively, and J.G., individually, having filed a putative class action suit[2] against defendants, Edward J. Borden, Jr., a Commissioner and the Public Safety Director of the Borough of Haddonfield, and the Borough of Haddonfield, claiming that defendants violated their equal protection and due process rights under the federal and state constitutions, by disregarding Attorney General Law Enforcement Directive 2008-2, and its predecessor, Law Enforcement Directive 2005-4 (individually or collectively, "the AG's Directive"), which promulgates "Guidelines for Stationhouse Adjustment of Juvenile Delinquency Offenses"; and

Plaintiffs claiming that when J.G., C.O., and C.W. were charged with minor alcohol-related offenses while they were juveniles, defendants had no discretion to not implement the AG's

---

[1]Also pending is defendants' motion for leave to file a brief in response to plaintiffs' reply brief.  (Docket No. 28) Plaintiffs have not objected to defendants' request, as long as their reply to defendants' additional brief would be considered as well.  The Court has reviewed all papers submitted in relation to plaintiffs' motion to dismiss defendants' counterclaim, and accordingly, will grant defendants' motion for leave.

[2]Plaintiffs have set forth federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as state constitutional claims under the Constitution of the State of New Jersey.  This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over their state law claims under 28 U.S.C. § 1367.

Directive of a stationhouse adjustment, which was to provide law enforcement agencies with an alternative method to punish and discipline first-time juvenile offenders, while averting the more severe consequences and ramifications of the juvenile justice system[3]; and

Plaintiffs further claiming that by categorically rejecting any stationhouse adjustments for minor alcohol-related offenses, defendants patently disregarded the AG's Directive, thereby infringing upon plaintiffs' constitutional rights; and

The Court having extensively reviewed plaintiffs' claims in evaluating defendants' motion to dismiss, the resolution of which permitted plaintiffs' due process and equal protection claims to proceed (Docket No. 17)[4]; and

Thereafter, defendants having filed their Answer to plaintiffs' claims, along with lodging a counterclaim against plaintiffs; and

Plaintiffs now moving to dismiss defendants' counterclaim,

_____

[3]As more-extensively explained in the Court's prior Opinion that resolved defendants' motion to dismiss plaintiffs' claims (Docket No. 17), pursuant to the AG's Directive, a juvenile officer would conduct a stationhouse adjustment wherein the juvenile, his or her parent or caregiver, and the victim meet with the officer to discuss the juvenile's minor offense.  The parties then attempt to resolve the matter, which may include restitution, a referral of the juvenile for services, and assurances that the juvenile will not commit any future offenses.

[4]The Court dismissed plaintiffs' claim for unreasonable seizure.

which seeks an order of the Court:

> A) Declaring that defendants have the discretionary legal authority to deny any and all stationhouse adjustments to juveniles who commit juvenile alcohol offenses.

> B) Declaring that the defendants have the discretionary legal authority to deny any and all stationhouse adjustments on a case by case basis, to juveniles who commit juvenile alcohol offenses.

> C) Declaring that the New Jersey Attorney General Directive No. 2008-2 with attached Guidelines do not mandate that the defendants offer a stationhouse adjustment regarding any juvenile who has committed a juvenile alcohol offense.

> D) Declaring that the Attorney General Guidelines indicate which juvenile offenses may be considered for a stationhouse adjustment and that the Guidelines do not mandate that any juvenile offense be offered a stationhouse adjustment.

> E) Declaring that New Jersey statutes, in particular N.J.S.A. 2A:4A-60 et seq. and the Attorney General Guidelines legally permit and do not prohibit the defendants from submitting certain statutorily defined information regarding a juvenile's alcohol offense (including all other juvenile offenses) and juvenilerelated instances, to the statutorily identified personnel of the Haddonfield School District, when a juvenile is offered and agrees to a stationhouse adjustment, or is formally charged with a juvenile offense, or is associated with alcohol related instances.

(Docket No. 21 at 16-17)[5]; and

In their motion to dismiss, plaintiffs having arguing, among

other things, that defendants' counterclaim must be dismissed

because defendants have not presented a valid case or controversy

---

[5]Defendants' counterclaim also seeks counsel fees, costs, and other equitable relief.  (Docket No. 21 at 17.)

to be adjudicated by this Court, and defendants are instead
asking this Court to issue an advisory opinion as to the validity
of defendants' interpretation and implementation of the AG's
Directive; and

Defendants having opposed plaintiffs' motion, arguing that
their counterclaim, at its core, merely seeks relief in the
converse of that which plaintiffs' seek, and it therefore should
be allowed; and

The Court finding that defendants' counterclaim does not
present a justiciable case and controversy, and must be dismissed
because:

It has been long held that a federal court has no power to
issue advisory opinions, and federal courts are without power to
decide questions that cannot affect the rights of litigants in
the case before them.  <u>North Carolina v. Rice</u>, 404 U.S. 244, 246
(1971); <u>see also</u> <u>Valley Forge Christian Coll. v. Ams. United for
Separation of Church & State, Inc.</u>, 454 U.S. 464, 471 (1982)
(explaining that Article III of the Constitution restricts the
"judicial power" of the United States to the resolution of cases
and controversies).  With regard to claims seeking a declaratory
judgment[6] from the court, "declaratory judgments are issued

---

[6]Defendants do not expressly cite to the Declaratory
Judgment Act, 28 U.S.C. § 2201, which states:

   In a case of actual controversy within its jurisdiction
   ... any court of the United States, upon the filing of

before 'accomplished' injury can be established, and this *ex ante* determination of rights exists in some tension with traditional notions of ripeness." Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 647 (3d Cir. 1990) (citation omitted). Thus, because the Constitution prohibits federal courts from deciding issues in which there is no "case[ ]" or "controversy," U.S. Const. art. III, § 2, declaratory judgments can be issued only when there is "an actual controversy," 28 U.S.C. § 2201. "The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties." Step-Saver, 912 F.2d at 647.

Here, defendants seek declarations regarding the current propriety of their interpretation and implementation of the AG's Directive.  As pleaded, defendants are asking this Court, through its own interpretation of the AG's Directive, to sanction their conduct, not only as it relates to the plaintiffs, but for all juveniles who have, or will, find themselves at the Haddonfield police station for an alcohol offence.  Defendants, however, do not provide any legal basis for the Court to issue such an order,

_____

an appropriate pleading, may declare the rights and
other legal relations of any interested party seeking
such declaration, whether or not further relief is or
could be sought.  Any such declaration shall have the
force and effect of a final judgment or decree and
shall be reviewable as such.

6

and they do not tie in their counterclaim to any injury they may suffer without such a declaration.

By contrast, if, for example, defendants had sought a declaration that they have not violated a certain juvenile's due process rights by interpreting the AG's Directive to provide them with discretion to not provide stationhouse adjustments for juvenile alcohol offences, such a claim may present an injury (i.e., defendants may be liable for violating that juvenile's constitutional rights), and the Court may be able to opine on the legal issue (i.e., the constitutionality of defendants' conduct). Such a claim would be akin to an insurance company's request that a disability policy "be declared to be null and void by reason of lapse for nonpayment of premiums," which the Supreme Court found justiciable. Step-Saver, 912 F.2d at 648 (discussing Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 240-41 (1937)). In order to determine whether the policy should be null and void, the insurance company asked the court to find a fact and then construe the insurance contract accordingly. Similarly, in order to determine the above hypothetical declaration of whether defendants are properly interpreting the AG's Directive, the Court would have to review defendants' actions and determine whether they were violating the due process clause. That

hypothetical declaration may be feasible.[7]

Instead, however, defendants have asked this Court to construe the AG's Directive and make proclamations of law, which constitutes constitutionally forbidden advisory opinion writing. See id.  The Court cannot issue a "seal of approval" of defendants' conduct without it being tied to any specific injury defendants' conduct could cause.  See, e.g., Public Service Commission of Utah v. Wycoff Co., Inc., 344 U.S. 237, 243 (1952) (explaining that it did not have jurisdiction to hear the requested declaration "that complainant's carriage of motion picture film and newsreels between points in Utah constitutes interstate commerce" because "the complainant does not request an adjudication that it has a right to do, or to have, anything in particular. . . . It seeks simply to establish that, as presently conducted, respondent's carriage of goods between points within as well as without Utah is all interstate commerce.  One

_____

[7]The Court is not suggesting that defendants make such a claim, because the utility of such a claim is questionable, as it is redundant of plaintiffs' claim against defendants, except alleged in the converse.  See Step-Saver, 912 F.2d at 647 (explaining that in deciding whether to hear a claim for a declaratory judgment, a court should consider the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment). That type of declaration would make more sense if defendants had anticipated litigation over the issue, and filed a declaratory judgment action prior to the filing of plaintiffs' complaint. The Court, however, takes no position on the validity of such a claim, and only offers it as a hypothetical contrast to defendants' current request for declaratory relief.

naturally asks, so what? To that ultimate question no answer is sought"); see also, e.g., PPS Data, LLC v. Availity, LLC, 2012 WL 252830, *2 n.2 (M.D. Fla. Jan. 26, 2012) (declining to exercise its jurisdiction under the Declaratory Judgment Act because the "court will not give Defendants a judicial imprimatur that all of their products, services, and conduct are 'ok'"); Board of County Com'rs of County of Boulder v. Rocky Mountain Christian Church, 481 F. Supp. 2d 1181, 1189 (D. Colo. 2007) (declining to entertain the county board's request for a declaratory judgment, explaining that "[g]overnmental entities must make difficult and potentially expensive decisions every day," and that the court "could foresee situations in which every difficult decision faced by a governmental entity would generate a declaratory judgment action . . . ., asking for the judicial stamp of approval on the entity's contemplated outcome").

Defendants' only purported injury is the possibility that these plaintiffs may be successful on their claims that defendants' interpretation and implementation of the AG's Directive has violated the equal protection and due process rights of these plaintiffs (or a class of similarly situated plaintiffs, if certified as a class). Being found liable for their violations of the constitution as to plaintiffs here, however, cannot serve as the "injury" that would create an "actual controversy" for the Court to resolve separate from and

independent of plaintiffs' claims against defendants.  Any other
purported injury, such as the notion that defendants may face
multiple law suits without the Court issuing their requested
declarations,[8] or that they have suffered legal costs related to
plaintiffs' prosecution of their suit against defendants, are
also not cognizable for the same reason.

As explained by the U.S. Supreme Court long ago,

A maximum of caution is necessary in the type of
litigation that we have here, where a ruling is sought
that would reach far beyond the particular case.  Such
differences of opinion or conflicts of interest must be
'ripe for determination' as controversies over legal
rights. The disagreement must not be nebulous or
contingent but must have taken on fixed and final shape
so that a court can see what legal issues it is
deciding, what effect its decision will have on the
adversaries, and some useful purpose to be achieved in
deciding them.

Wycoff Co., 344 U.S. at 243-44; see also Maryland Casualty Co. v.
Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) (explaining that
the difference between an abstract question and a "controversy"
contemplated by the Declaratory Judgment Act is necessarily one
of degree, and the question in each case is whether the facts
alleged, under all the circumstances, show that there is a
substantial controversy, between parties having adverse legal

---

[8]Any ruling by the Court on plaintiffs' claims related to
defendants' handling of the AG's Directive may have a preclusive
effect on future claims. Plaintiffs suggest, however, that
because defendants changed their interpretation of the AG's
Directive as of June 8, 2010, defendants' concerns about future
lawsuits are unfounded.  The Court takes no position on these
issues at this time.

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment).

As defendants have pleaded their declaratory judgment counterclaim, they have presented abstract questions that cannot be answered by this Court.[9]

Accordingly,

**IT IS HEREBY** on this    30th    day of March , 2012

**ORDERED** that plaintiffs' motion to dismiss defendants' counterclaim [22] is **GRANTED**, and defendants' counterclaim is **DISMISSED WITHOUT PREJUDICE**;[10] and it is further

_____

[9]Compare with <u>State of Mo. ex rel. Missouri Highway and Transp. Com'n v. Cuffley</u>, 112 F.3d 1332, 1338 (8th Cir. 1997) (where the state filed a declaratory judgment action in federal district court seeking a declaration that it was not required to approve the Ku Klux Klan's application to participate in Missouri's Adopt-A-Highway program prior to approving or denying the Klan's application, the court finding, "If the State is unsure how to handle the Klan's application, it should seek the advice of its legal staff, not the advice of a federal judge"); also compare with <u>Franchise Tax Bd. v. Construction Laborers Vacation Trust</u>, 463 U.S. 1 (1983), which held that "there is no federal jurisdiction of a suit by a state for a declaration of the validity of state law even though the party being sued by the state could have raised the same issue in federal court in an action for coercive relief."  13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3566, at 97 (2d ed. 1984).

[10]Defendants may amend their pleading, in accordance with Fed. R. Civ. P. 15, to restate their request for declaratory relief, if they wish, but the Court notes that a court has the power to make a declaration pursuant to 28 U.S.C. § 2201, but it does not require that the court exercise that power. <u>Step-Saver Data Systems, Inc. v. Wyse Technology</u>, 912 F.2d 643, 646-47 (3d

**ORDERED** that defendants' motion for leave to file supplemental briefing [28] is **GRANTED**.

                                    s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

---

Cir. 1990).  Whether or not Defendants seek to amend, the Court reiterates that a decision in defendants' favor on plaintiffs' claims, either individually or as a class, will effectively grant the relief a narrowly drawn counterclaim would seek - a declaration as to the validity of defendants' interpretation of the AG's Directive as it pertains to these plaintiffs or class of plaintiffs.

12